UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **ABDOUL KARIMOU DIALLO** | **CIVIL ACTION NO. 25-2012 SEC P** |
| **VERSUS** | **JUDGE EDWARDS** |
| **DONALD J TRUMP ET AL** | **MAG. JUDGE PEREZ-MONTES** |

## MEMORANDUM ORDER

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) filed by Petitioner, Abdoul Karimou Diallo ("Diallo"). Donald Trump, Kristi Noem, Pamela Bondi, Todd Lyons, Scott Ladwig, and the Executive Office for Immigration Review ("Federal Respondents") filed a Response. *See* ECF No. 49. And Diallo has filed a Reply. *See* ECF No. 60.

After careful consideration of the record, the parties' memoranda, and the applicable law, the Petition is **GRANTED**.

**I.    BACKGROUND**

"Diallo is a 27-year-old gay Guinean man…." *See* ECF No. 1 at 5. He fled Guinea and crossed illegally into the United States near Sasabe, Arizona, on or about December 27, 2023. *See id.* at 2; ECF No. 53-1 at 2. He was arrested and then released on his own recognizance, "[i]n accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations." *See* ECF No. 53-1 at 3. Diallo lived uneventfully and productively in New York City until he was re-detained at an immigration hearing on May 30, 2025. *See* ECF No. 1 at 2.

On December 12, 2025, Diallo filed the instant habeas Petition. *See* ECF No. 1. As relevant to our disposition of his case, Diallo contends that his "re-detention violates his procedural due process rights because he was not afforded notice or an opportunity to challenge" the same. *See* ECF No. 22-1 at 13. Federal Respondents maintain that Diallo is properly mandatorily detained under 8 U.S.C. § 1225(b), and that habeas relief is unwarranted. *See* ECF No. 49 at 8. More below.

## II.   LEGAL STANDARD

A federal district court may grant a writ of habeas corpus to a petitioner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The petitioner "bears the burden of proving that he [or she] is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his [or her] burden of proof by a preponderance of the evidence." *Villanueva v. Tate*, 801 F.Supp.3d 689, 696 (S.D. Tex. 2025) (internal citations omitted). A court considering a habeas petition must "determine the facts and dispose of the matter as law and justice require." *Id.* (citing 28 U.S.C. § 2243).

## III.   ANALYSIS

This case comes down to whether the Government acted in comport with the due process guarantees of the Constitution when they re-detained Diallo without a hearing or any discretionary determination. This issue is separate and apart from whether he would be statutorily detainable under 8 U.S.C. § 1225(b). *See Hernandez-Fernandez v. Lyons,* No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *7 (W.D. Tex. Oct. 21, 2025); *see also Alvarado v. Vergara,* No. 1:26-CV-00309-DAE, 2026 WL 594366, at *3 (W.D. Tex. Mar. 2, 2026). So, rather, we are only considering whether "once

released from immigration custody, [Diallo] acquire[d] a protectable liberty interest in remaining out of custody on bond" such that he was entitled to "a pre-deprivation hearing before [] revocation." *Hernandez-Fernandez*, 2025 WL 2976923, at *9. We find that he was so entitled, and that Federal Respondents' re-detention of him without the same violated his procedural due process rights.

We begin with Federal Respondents' chosen cases, starting with *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020), for the proposition that Diallo is not entitled to any more process than that provided under § 1225—and thus cannot bring a procedural due process claim here. *See* ECF No. 49 at 6, 13–15. Simply put, "the holding in *Thuraissigiam* does not foreclose [Diallo's] due process claims, which seek to vindicate a right to an individualized bond hearing." *Hernandez-Fernandez*, 2025 WL 2976923, at *7 (citing *Lopez-Arevelo v. Ripa*, 801 F.Supp.3d 668, 681–85 (W.D. Tex. 2025); *Espinoza v. Kaiser*, No. 25-CV-1101, 2025 WL 2581185, at *7 n.9 (E.D. Cal. Sept. 5, 2025); and *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F.Supp.3d 1163, 1171 (W.D. Wash. 2023)); *see also Vieira v. De Anda-Ybarra,* 806 F.Supp.3d 690, 698–700 (W.D. Tex. 2025); *Alvarado*, 2026 WL 594366, at *3. The same is true of *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003). *See Chan v. Bondi,* No. 3:25-CV-298, 2026 WL 388605, at *2 (W.D. Pa. Feb. 12, 2026); *Hernandez v. ICE Field Off. Dir., El Paso, Texas,* No. 26-CV-67, 2026 WL 503958, at *2 (W.D. Tex. Feb. 23, 2026); *Alvarado,* 2026 WL 594366, at *3. And too for *Wekesa v. U.S. Attorney*, No. 22-10260, 2022 WL 17175818 (5th Cir. Nov. 22, 2022). *See Alvarado*, 2026 WL 594366, at *3; *Lopez-Arevelo,* 801 F.Supp.3d at 683–84.

3

Assured that nothing above should prevent Diallo from bringing a procedural due process claim in the first place, the Court must then determine whether he has shown a violation of his due process rights. "To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem*, No. 5:25-CV-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

**1. Private Interest**

"The interest in being free from physical detention' is 'the most elemental of liberty interests.'" *Martinez*, 2025 WL 2598379, at *2 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). True, the Fifth Circuit has held that § 1225(b) provides for mandatory detention. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026). But again, that does not negate "the liberty interests created by the fact that the Petitioner[ ] in this case [was] released on recognizance prior to the manifestation of this interpretation." *Lopez-Arevelo*, 801 F.Supp.3d at 677–78 (citing *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at *10 (E.D. Cal. Sept. 5, 2025)). Diallo was provided with an Order of Release on Recognizance ("OREC") that set out the conditions and relevant provisions governing his release. *See* ECF No. 53-

4

1 at 3. He was released under 8 U.S.C. 1226(a). *See id.* And release under § 1226(a) entitles an alien to "a bond re-determination hearing before revocation," which Diallo was not given. *Chiliquinga Yumbillo v. Stamper,* No. 2:25-CV-00479-SDN, 2025 WL 2783642, at *4 (D. Me. Sept. 30, 2025) (citing *Bermeo Sicha v. Bernal,* No. 1:25-CV-00418-SDN, 2025 WL 2494530, at *4–6 (D. Me. Aug. 29, 2025)); *see also Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981).

Accordingly, we find that Diallo acquired "a protected liberty interest in [his] continued liberty," having spent more than a year released on his own recognizance in the United States, such that the Government cannot revoke him at their whim, without any allegation that he "failed to live up to the parole conditions." *See Hernandez-Fernandez,* 2025 WL 2976923, at *8–9 (citing *Espinoza,* 2025 WL 2581185, at *9; *Diaz v. Kaiser*, No. 25-CV-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025); and *Rosado v. Figueroa*, No. 25-CV-02157, 2025 WL 2337099, at *12 (D. Ariz. Aug. 11, 2025)). This factor weighs in his favor.

**2. Risk of Erroneous Deprivation**

Under the second *Mathews* factor, the Court considers "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Martinez,* 2025 WL 2598379, at *3 (W.D. Tex. Sept. 8, 2025) (quoting *Gunaydin v. Trump*, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025)). By categorizing Diallo as an alien "subject to mandatory detention under § 1225," he is necessarily deprived of "an opportunity to contest the existence, nature, or significance of [any] supervision violations."

5

*Espinoza*, 2025 WL 2581185, at *11. This presents an avoidable risk of erroneous deprivation. *See Vieira*, 806 F.Supp.3d at 701 ("The risk lies in the automatic continued deprivation of liberty ..."). "[A] bond hearing or pre-detention notice … would reduce the likelihood of an erroneous loss of liberty." *Alvarado,* 2026 WL 594366, at *4. And such alternatives are readily available. *See Hernandez-Fernandez,* 2025 WL 2976923, at *9 (citing *Velesaca v. Decker*, 458 F.Supp.3d 224, 242 (S.D.N.Y. 2020)). Thus, this factor also weighs in Petitioner's favor.

### 3. Government's Interest

"The Government has a legitimate interest in preventing a detainee's flight and in protecting the community." *Gutierrez v. Thompson,* No. 4:25-4695, 2025 WL 3187521, at *8 (S.D. Tex. Nov. 14, 2025). And "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). "However, the government has little legitimate interest in suddenly detaining without a hearing noncitizens whom DHS already determined to be neither a flight risk nor a danger to the community." *Bermeo Sicha,* 2025 WL 2494530, at *6 (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021)); *see also Saravia v. Sessions*, 280 F.Supp.3d 1168, 1176 (N.D. Cal. 2017), *aff'd* 905 F.3d 1137 (9th Cir. 2018) (explaining that initial release "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Given his participation in the immigration process up until his re-detention, including his adherence to the terms of his release, and a lack of evidence in the record that he presents a flight risk or danger to the community, this factor weighs in Diallo's favor. *See Hernandez-Fernandez,* 2025 WL 2976923, at *9–10.

Because all three *Mathews* factors tilt in Diallo's favor, the Court finds that Diallo's re-detention deprives him of his constitutional right to procedural due process under the Fifth Amendment of the United States Constitution. The appropriate remedy, ever conscientious of Mr. Diallo's unfortunate medical circumstances, *see* ECF No. 43, and in order to remedy this "arbitrary deprivation of liberty," is immediate release "subject to the conditions originally imposed" by the OREC. *See Hernandez v. Bernacke,* No. 2:26-CV-00355-RFB-NJK, 2026 WL 497340, at *2 (D. Nev. Feb. 23, 2026).

### IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**. Respondents are **ORDERED** to release Diallo from custody by 5:00 p.m. on March 6, 2026.

**IT IS FURTHER ORDERED** that the parties shall file a joint notice of compliance with this Order by March 9, 2026.

**THUS DONE AND SIGNED** this 5th day of March, 2026.

_____
JERRY EDWARDS, JR.
UNITED STATES DISTRICT JUDGE